In the Matter of KEITH HAYNES et al., Petitioners, v STERLING JOHNSON, JR., as Special Assistant District Attorney for Narcotics Prosecutions, et al., Respondents.

In the Matter of JOSE COLLADO, Petitioner, v IRA E. BEAL, as Justice of the Supreme Court, Respondent.

JUAN DEJESUS, Petitioner, v PAUL K. BOOKSON, as Justice of the Supreme Court, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JUAN CARLOS SAENZ, Defendant.

First Department, March 28, 1991

## APPEARANCES OF COUNSEL

*Steven Wasserman* of counsel *(Robert M. Baum,* attorney), for Keith Haynes and another, petitioners in proceeding No. 1.

*John J. Dockry* for Jose Collado and another, petitioners in proceedings Nos. 2 and 3.

*Christopher R. Lynn* for Juan Carlos Saenz, defendant.

*Mark Dwyer* and *Marc F. Scholl* of counsel *(Robert M. Morgenthau, District Attorney,* attorney), for Sterling Johnson, Jr., respondent, and another, plaintiff.

*Abigail I. Petersen* of counsel *(Robert Abrams, Attorney-General,* attorney), for Paul K. Bookson, respondent.

*Jay M. Cohen* and *Caroline R. Donhauser* of counsel *(Charles J. Hynes, District Attorney,* attorney), for District Attorney of Kings County, *amicus curiae,* .

## OPINION OF THE COURT

KUPFERMAN, J.

At issue is an agreement reached in March of 1990 between Charles J. Hynes, the District Attorney of Kings County, and Sterling Johnson, Jr., the Special Assistant District Attorney for Narcotics Prosecutions, whereby 20 felony narcotics cases per week would be transferred from Kings County to the Special Narcotics Prosecutor's office for indictment and prosecution in the Special Narcotics Court Parts sitting in New York County.

Petitioners, and defendant Saenz, all of whom were arrested in Kings County and arraigned on felony complaints in New York County Criminal Court and subsequently indicted by Special Narcotics Grand Juries, contend, *inter alia,* that there is no geographical jurisdiction to prosecute them in New York County for alleged crimes committed in Kings County. Petitioners Haynes, Cruz, Collado and DeJesus raise their claims in the form of CPLR article 78 proceedings, brought in this court in the first instance pursuant to CPLR 506 (b) (1), seeking writs of prohibition, while defendant Saenz moves pursuant to CPL 230.20 to change venue from New York to Kings County.

Although presented in various procedural postures, the matters have been consolidated at the request of the parties inasmuch as they raise common questions relating to the geographical jurisdiction of the Special Narcotics Parts of the Supreme Court in cities with a population of 1,000,000 or more as established by the Legislature in Judiciary Law article 5-B.* Such claims are based upon opinions expressed and questions raised by the court in *People v Lee* (NYLJ, Nov. 2, 1990, at 22, col 5), which essentially come down to a belief that the rationale for and the organization and rules governing the Special Narcotics Parts are presently lacking and that, absent any plan mutually agreed upon by the five New York City prosecutors and agreed to or approved by the Chief Judge or Chief Administrator of the Courts, as successor to the now defunct Administrative Board of the Judicial Conference, the necessary geographical jurisdiction is absent.

While prohibition is a proper remedy to challenge the geographical jurisdiction of a criminal court prior to trial, such relief is appropriate only when a petitioner has established that he or she has no adequate remedy at law and demonstrates a clear right to relief *(see, Matter of Morgenthau v Erlbaum,* 59 NY2d 143, 147, *cert denied* 464 US 993; *Matter of Machado v Donalty,* 107 AD2d 1079, 1080).

Upon the record presented, there is little or no such showing. On the contrary, article 5-B of the Judiciary Law is still on the books and has not been repealed. That statute provides for the appointment of the Special Narcotics Prosecutor (§ 177-c) and authorizes him to prosecute all offenses cognizable by

---

* While the *DeJesus* petition and the *Saenz* motion are without merit for a variety of reasons, our discussion is limited to the geographical jurisdiction issue.

any Special Narcotics Part irrespective of the county in which the Part is held and in which the crime charged was committed (§ 177-d [ii]). While the centralized Special Narcotics Parts were abolished in 1979, after Federal funding for them dried up, and the rules of practice and procedure for the Special Narcotics Parts (22 NYCRR part 32) governing those Parts were repealed in 1982, the designation of Special Narcotics Parts under the plan implementing the Individual Assignment System in New York County and the impaneling of Grand Juries for such courts have continued to date by virtue of judicial orders and administrative directives.

There is no dispute that, pursuant to a 1977 constitutional amendment (NY Const, art VI, § 28 [b]), the Chief Judge and his appointees, the Chief Administrator of the Courts or his deputies, have succeeded to the powers formerly held by the Administrative Board of the Judicial Conference *(see, Matter of Association of Secretaries to Justices of Supreme & Surrogate's Cts. v Office of Ct. Admin.,* 75 NY2d 460, 468) and the constitutionality of article 5-B has long been upheld *(People v Taylor,* 39 NY2d 649).

Contrary to the suggestion expressed in *People v Lee (supra)* there is no evidence that the statute has expired by virtue of its so-called "sunset" provision (i.e., the provision in Judiciary Law § 177-a that the establishment of the Special Narcotics Parts shall continue "during the duration of the [narcotics law enforcement] emergency") and, absent express repeal language, repeals by implication are not favored (McKinney's Cons Laws of NY, Book 1, Statutes § 391). "[T]he courts may not effect such a repeal merely because the purposes underlying the original enactment of the statute no longer apply" *(Quaglia v Incorporated Vil. of Munsey Park,* 54 AD2d 434, 439).

In addition, in 1971, the five District Attorneys of the counties within the City of New York, pursuant to the requirements of Laws of 1971 (ch 462) (Judiciary Law art 5-B), approved a plan to carry out the purposes of the act, and there is nothing in the record to indicate that such plan has been abrogated, or for that matter, approved by the judiciary. Such plan states in its preamble that "[i]n the effort to develop the most effective techniques for the prosecution of narcotics cases there will be occasions when certain procedures may be tried experimentally in some counties and not in others." Thus, the 1990 agreement between the Kings County District Attorney and the Special Narcotics Prosecutor

would appear to fall within the purview of such agreement. In any event, none of the parties to the 1971 agreement or their successors have come forward to object to the 1990 agreement.

The only complaint regarding the agreement is addressed in a September 26, 1990 memorandum from the Office of Court Administration counsel to the Deputy Chief Administrative Judge of New York City Courts to the effect that the agreement between the Kings County District Attorney and the Special Narcotics Prosecutor was concluded and is being implemented without the input and approval of the judiciary, apparently in contravention of the procedural framework set out in article 5-B, and that a strong legal and policy argument can be made that any plan under the statute to transfer narcotics cases from one or more counties to another requires judicial input and approval.

However, while the Legislature contemplated that the emergency narcotics court program would be implemented by the joint efforts of the District Attorneys in New York City, the judiciary and other criminal justice services acting in accordance with a mutually agreed upon plan (§ 177-a), nothing in the implementing statutes requires such agreement or approval by the judiciary. Indeed, neither the Chief Judge nor the Chief Administrator have sought to intervene in these proceedings or to appear *amicus curiae* in order to urge such theory and the respondent Judges, including the author of *People v Lee (supra)* have elected not to appear except for Justice Bookson, who has cross-moved to dismiss the petition against him on the ground that petitioner DeJesus has a remedy which he has not yet pursued, i.e., a motion under the Criminal Procedure Law to dismiss the indictment.

Absent such intervention or participation, there is no basis for a finding that the rationale or authority for the Special Narcotics Courts and the Special Narcotics Prosecutor have lapsed or that the judiciary sits idly by, while other parties independently determine the allocation or transfer of significant numbers of cases to the New York County Parts designated by the Deputy Chief Administrative Judge to handle cases prosecuted by the Special Narcotics Prosecutor. The contrary is more likely. In any event, petitioners and movant have failed to make a clear showing that respondents are proceeding or about to proceed in excess of their geographical jurisdiction as provided by Judiciary Law article 5-B, which clear showing is necessary to warrant this court's granting of the extraordinary remedy of prohibition.

Accordingly, the motion (M-259) of Honorable Charles J. Hynes for leave to appear *amicus curiae* should be granted, the cross motion to dismiss in *DeJesus v Bookson* (M-5839) should be granted, the petitions for writs of prohibition should be denied and the proceedings dismissed, without costs, and the motion of defendant Saenz for a change of venue (M-5664) should be denied.

We have considered the other arguments raised and find them without merit.

SULLIVAN, J. P., CARRO, ROSENBERGER and ELLERIN, JJ., concur.

Motion (M-259) of Honorable Charles J. Hynes for leave to appear *amicus curiae* granted, the cross motion to dismiss in *DeJesus v Bookson* (M-5839) granted, the applications for writs of prohibition denied and the proceedings dismissed, without costs, and the motion for defendant Saenz for a change of venue (M-5664) is denied.